Christopher M. TERRAN, Plaintiff–
Appellant–Cross–Appellee,

v.

Jerold KAPLAN, Defendant–Appellee–
Cross–Appellant.

Nos. 95–17402, 96–15010.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Mar. 10, 1997.

Decided March 28, 1997.

Michael C. Shaw, Bybee & Shaw, Tempe, Arizona, for the plaintiff-appellant-cross-appellee.

Stanley M. Hammerman, Hammerman & Hultgren, Phoenix, Arizona, for the defendant-appellee-cross-appellant.

Before: ALARCON, BEEZER, and O'SCANNLAIN, Circuit Judges.

ALARCON, Circuit Judge.

This action arises from a letter sent by Jerold Kaplan, in his capacity as a debt collector, to Christopher Terran to collect on a debt Terran owed to Montgomery Ward Credit Corporation in the amount of $546.63 (the "collection letter"). Terran appeals from the district court's denial of a damage award following its determination that the collection letter violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692a–o. Kaplan cross-appeals from the district court's conclusion that the letter violated the FDCPA. Both parties challenge the district court's order that each party must bear its own attorneys' fees and costs.

We conclude that Kaplan's collection letter did not violate the FDCPA. Because we reverse the district court on this ground, we do not reach Terran's challenge to the district court's denial of damages. We further remand for a recalculation of attorneys' fees and costs due Kaplan and for clarification of whether Terran, his counsel, or both are responsible for the payment of these fees and costs under Rule 11 of the Federal Rules of Civil Procedure.

**I**

On May 16, 1994, Kaplan, a debt collection attorney, mailed an initial letter of indebtedness to Terran (the "collection letter"). The one-page letter, typed on Kaplan's law office letterhead, contained three paragraphs set in

a uniform size and typeface. The letter stated:

> Please be advised that this office represents MONTGOMERY WARD CREDIT CORP with whom you have an outstanding balance of $546.63.
>
> Unless an immediate telephone call is made to J SCOTT, a collection assistant of our office at (602) 258-8433, we may find it necessary to recommend to our client that they proceed with legal action.
>
> Unless you notify us in writing within thirty (30) days after receipt of our initial notice that you dispute the validity of this debt, or any portion thereof, we will assume the debt to be valid. Upon such notification, we will obtain verification of the debt or a copy of the judgment against you and a copy of such verification or judgment will be mailed to you. Upon your written request within the thirty (30) day period described above we will provide you with the name and address of the original creditor if different from the current creditor.

On September 9, 1994, Terran filed a complaint in the district court against Kaplan alleging violations of 15 U.S.C. §§ 1692e(3), (5), (10),[1] & 1692g[2] of the FDCPA; unreasonable debt collection practices under Ariz. Rev.Stat. §§ 32–1001; and intentional infliction of emotional distress. Terran demanded actual damages, statutory damages, punitive damages, and attorneys' fees and costs. On March 22, 1995, Terran moved for summary judgment solely on the § 1692g claim. The district court denied the motion on May 12, 1995, concluding that the claim presented a disputed question of fact for the jury. On June 12, 1995, Terran unilaterally moved for a dismissal of all the claims in the complaint with prejudice except the § 1692g claim. This motion was granted. He further indicated that the only relief he sought was statutory damages under 15 U.S.C. § 1692k,[3] in the amount of $1,000.

---

1. Section 1692e provides, in relevant part:

   A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

   . . .

   (3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

   . . .

   (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

   . . .

   (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

   15 U.S.C. § 1692e.

2. Section 1692g provides in pertinent part:

   (a) Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

   (1) the amount of the debt;

   (2) the name of the creditor to whom the debt is owed;

   (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

   (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and

   (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

   15 U.S.C. § 1692g(a).

3. Section 1692k, entitled "Civil Liability," provides, in part:

   (a) Except as otherwise provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of—

   (1) any actual damage sustained by such person as a result of such failure;

   (2)(A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; . . . and

   (3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court. On a finding

Immediately prior to trial, on July 5, 1995, Kaplan filed a trial memorandum in which he claimed that Terran had asserted claims in his complaint in bad faith and for purposes of harassment under § 1692k(a)(3), and without a good faith inquiry and a reasonable basis as required by Rule 11.[4] Accordingly, Kaplan requested reasonable attorneys' fees and costs.

Following a bench trial, the district court issued a Memorandum and Order on November 9, 1995, in which it concluded that Kaplan's collection letter was "at best minimally violative" of the FDCPA. The district court denied Terran statutory damages based on the absence of evidence of "willful or repeated disregard" of the FDCPA,[5] and further ordered that each party bear its own fees and costs.

## II

■ Congress enacted the FDCPA to " 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.' " Swanson v. Southern Oregon Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir.1988) (quoting S.Rep. No. 95–382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699). "[T]o ensure that debt collectors g[i]ve consumers adequate information concerning their legal rights," id.

(citation omitted), section 1692g(a) requires that the initial communication with a consumer in connection with a debt contain: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that if the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer disputes the debt, the debt collector will mail the consumer verification of the debt or a copy of a judgment; and (5) a statement that, upon the consumer's written request, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

Terran does not dispute that the collection letter contained all of the statements required under section 1692g. Rather, he asserts that the additional language in the letter "overshadowed and/or contradicted the validation notice."

■ Under the law of this circuit, whether the initial communication violates the FDCPA depends on whether it is "likely to deceive or mislead a hypothetical 'least sophisticated debtor.' " Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100 (9th Cir. 1996) (quoting Swanson, 869 F.2d at 1225). The objective least sophisticated debtor stan-

by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.
15 U.S.C. § 1692k(a).

4. Rule 11 provides, in part:

(b) Representations to Court. By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
(c) Sanctions. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may ... impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.
Fed.R.Civ.Pro. 11(b) & (c).

5. Factors to be considered by the court in determining the amount of liability under section 1692k(a), include "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." 15 U.S.C. § 1692k(b).

dard is "lower than simply examining whether particular language would deceive or mislead a reasonable debtor." *Swanson*, 869 F.2d at 1227. To satisfy section 1692g's requirements, "the notice Congress required must be conveyed effectively to the debtor. It must be large enough to be easily read and sufficiently prominent to be noticed ... [and it] must not be overshadowed or contradicted by other messages or notices appearing in the initial communication from the collection agency." *Id.* at 1225 (citation omitted).

**A**

■ We have not previously been called upon to decide the appropriate standard to review a district court's determination, following a bench trial, that language in a letter sent by a collection agency contradicts and overshadows the statutorily required validation notice so as to confuse or mislead a least sophisticated debtor.

Whether there has been a violation of section 1692g's validation requirement has generally been decided by district courts on motions for summary judgment and, therefore, reviewed *de novo*. *See United States v. National Fin. Servs., Inc.*, 98 F.3d 131, 139 (4th Cir.1996) (affirming district court's grant of summary judgment for debtor because collection agency raised no issue of fact concerning the district court's determination that the language at issue conflicted with the validation notice). Nonetheless, the caselaw makes clear that the question whether language in a collection letter overshadows or contradicts the validation notice so as to confuse a least sophisticated debtor is a question of law. *See Swanson*, 869 F.2d at 1225–26 (reversing the district court's grant of a summary judgment in favor of collection agency and holding that the collection letter violates section 1692g because it misleads a least sophisticated debtor); *see also Russell v. Equifax A.R.S.*, 74 F.3d 30, 33, 35 (2d Cir. 1996) (noting that "only legal issues, which we review *de novo*, are contested," reversing district court's grant of summary judgment in favor of collection agency, and concluding that the language overshadowed and contradicted the validation notice and thus, "violat-

ed § 1692g as a matter of law"); *Graziano v. Harrison*, 950 F.2d 107, 111, 114 (3d Cir. 1991) (reversing district court's determination that the collection letter did not violate section 1692g, and concluding that the letter failed to "meet the terms of section 1692g"); *Miller v. Payco–General American Credits, Inc.*, 943 F.2d 482, 484–85 (4th Cir.1991) (reversing district court's grant of summary judgment for collection agency, and holding that validation notice was overshadowed and contradicted, preventing its effective communication). *But see Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 778 (9th Cir.1982) (concluding that the district court's finding that "the notice 'does not inform [the debtor] that he may dispute only a portion of the debt' and thus violate[s] § 1692g(a)(3)," is a question of fact that must be upheld unless clearly erroneous). We review a district court's conclusions of law following a bench trial *de novo*. *Magnuson v. Video Yesteryear*, 85 F.3d 1424, 1427 (9th Cir.1996).

Our conclusion that the determination of whether a collection letter violates section 1692g is a question of law that we review *de novo* is buttressed by the rationale behind our *de novo* review standard for contracts and other written instruments, including collective bargaining agreements and trust agreements. *See, e.g., Northern Cal. Dist. Council of Laborers v. Pittsburg–Des Moines Steel Co.*, 69 F.3d 1034, 1036 (9th Cir.1995) (collective bargaining agreement); *Miller v. Safeco Title Ins. Co.*, 758 F.2d 364, 367 (9th Cir.1985) (contract interpretation).

> When the district court's decision is based on an analysis of the contractual language and an application of the principles of contract interpretation, that decision is a matter of law and reviewable *de novo*. When the inquiry focuses on extrinsic evidence of related facts, however, the trial court's conclusions will not be reversed unless they are clearly erroneous.

*Safeco*, 758 F.2d at 367. Similarly, determination of whether language in a collection letter overshadows or contradicts the validation notice required by section 1692g so as to mislead or confuse a least sophisticated debtor does not turn on the credibility of extrinsic evidence. *Northern Cal. Dist.*

*Council,* 69 F.3d at 1036 (reviewing *de novo* because interpretation of forum selection clause in collective bargaining agreement "does not turn on the credibility of extrinsic evidence"). Thus, we review Terran's claim that the collection letter violated section 1692g *de novo.*

### B

"Our role ... is ... the essentially negative one of examining whether a given notice comports with the requirements of the statute." *Payco–General Am. Credits,* 943 F.2d at 485. We have only once before been called upon to decide whether language in a collection agency's initial communication to an alleged debtor overshadows or contradicts the validation notice.

In *Swanson,* we held that the communication was "misleading in both form and content" where the validation notice appeared in small, regular-face type, at the bottom of the form, beneath a message in bold-face, underlined type, three times the size of the validation font, which read: "IF THIS ACCOUNT IS PAID WITHIN THE NEXT 10 DAYS IT WILL NOT BE RECORDED IN OUR MASTER FILE AS AN UNPAID COLLECTION ITEM. *A GOOD CREDIT RATING–IS YOUR MOST VALUABLE ASSET.*" *Swanson,* 869 F.2d at 1225. We concluded that the requisite validation notice was "dwarfed" by the additional language, and that the message conveyed to a least sophisticated debtor was that "he must ignore his right to take 30 days to verify his debt and act immediately or he will be remembered as a deadbeat in the 'master file' of his local collection agency and will, accordingly, lose his 'most valuable asset,' his good credit rating." *Id.* at 1226.

Every other circuit that has concluded that section 1692g was violated, in which the least sophisticated debtor standard is applied [6] involved a written communication containing language regarding *payment* of the alleged debt that contradicted or overshadowed the

validation notice. *See National Fin. Servs.,* 98 F.3d at 139 (conflicting time requirements in the demand for payment and the validation notice violate section 1692g); *Russell,* 74 F.3d at 34 (concluding that additional language overshadows and conflicts with the validation notice because least sophisticated debtor could understand letter to state that "to take any course of action other than payment ... within ten days, ... would permanently affect [the debtor's] credit record"); *Graziano,* 950 F.2d at 111 (holding that there was a "reasonable probability that the least sophisticated debtor, faced with a demand for payment within ten days and a threat of immediate legal action if payment is not made in that time, would be induced to overlook his statutory right to dispute the debt within thirty days"); *Payco–General American Credits,* 943 F.2d at 484 (requiring debtor to either dispute the debt by phoning "today," or if no dispute by paying "now," is inconsistent with the validation requirement of section 1692g). In each of these cases, payment was demanded within a time period less than the statutory thirty days granted to dispute the debt *and* this demand was communicated in a format that emphasized the duty to make payment, and obscured the fact that the debtor had thirty days to dispute the debt. *See National Fin. Servs.,* 98 F.3d at 139 (requiring either immediate payment or payment within ten days in "bold commanding type" on front of notice, with validation notice printed in smaller, less visible grey ink on back side); *Russell,* 74 F.3d at 32 (demanding payment within ten days, in all uppercase, selectively bolded typeface, with the validation notice in uppercase, unbolded print on the reverse side); *Graziano,* 950 F.2d at 109 (threatening legal action if no payment within ten days, with validation notice appearing on reverse side); *Payco–General American Credits,* 943 F.2d at 483 (requiring in large, red and black, bold type that debtor dispute debt by phoning "today," or remit payment "immediately," with validation notice printed in grey ink on the reverse side).

---

**6.** The Seventh Circuit rejected the "somewhat lesser" least sophisticated debtor standard, and instead measures alleged violations of the FDCPA "through the eyes of the 'unsophisticated consumer.'" *See Avila v. Rubin,* 84 F.3d 222,

226 (7th Cir.1996) (applying unsophisticated consumer standard to conclude that initial communication was "entirely inconsistent" with FDCPA).

Here, the request that the alleged debtor immediately telephone a collection assistant does not overshadow the language in the notice that the alleged debtor has thirty days in which to dispute the debt. The validation notice immediately follows the language regarding an immediate telephone call. The text of the letter is uniformly presented in ordinary, same-size font. No emphasis is placed on any particular statement, with the exception of the creditor's name and the name of the person to contact at Kaplan's office, both of which appear in uppercase letters.

It is particularly significant that the challenged language in this matter does not require *payment* "immediately." It merely requests a phone call. A demand for payment within less than the thirty-day timeframe necessarily requires the debtor to forego the statutory right to challenge the debt in writing within thirty days, or suffer the consequences. For this reason, requiring a payment that would eliminate the debt before the debtor can challenge the validity of that debt directly conflicts with the protections for debtors set forth in section 1692g. The request that the debtor telephone the collection agency does not contradict the admonition that the debtor has thirty days to contest the validity of the debt. This language simply encourages the debtor to communicate with the debt collection agency. It does not threaten or encourage the least sophisticated debtor to waive his statutory right to challenge the validity of the debt.

We are persuaded that the form and content of the additional language contained in Kaplan's initial communication did not overshadow or contradict the validation notice. Accordingly, we hold that the district court erred in holding that "at best" the collection letter "minimally violated" the FDCPA. Because we conclude that the collection letter did not violate section 1692g, we do not reach Terran's request for statutory damages.

### III

The district court ordered that each party bear its own attorneys' fees and costs. In so doing, the district court recognized that "[a] debt collector is liable for reasonable attorneys' fees in the case of any successful action against it." (E.R. Ex. D at 7.) It also concluded, however, that Terran's complaint was pleaded in bad faith, for purposes of harassment, and without adequate investigation. Because the district court found that the time expended, and the costs incurred, by each party were equivalent, the court ordered that each party bear its own expenses, rather than award Terran fees and costs, only to sanction him by offsetting that award by the amount of Kaplan's fees and costs.

■ Because we have concluded that the collection letter does not violate § 1692g, Terran is not entitled to attorneys' fees under § 1692k(a)(3). Accordingly, the district court erred in holding that Terran was a prevailing plaintiff. For that reason, we must address his challenge to the district court's finding that Terran filed the complaint without adequate investigation. Because we conclude that the district court did not clearly err in finding that Terran filed the complaint without conducting the inquiry required under Rule 11, we do not decide the validity of the district court's finding that Terran acted in bad faith.

■ Rule 11(b) of the Federal Rules of Civil Procedure requires that in all representations to the court an attorney conduct "an inquiry reasonable under the circumstances." An order imposing Rule 11 sanctions is reviewed for an abuse of discretion. *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1261, 134 L.Ed.2d 209 (1996). "A district court abuses its discretion in imposing sanctions when it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Mark Indus., Ltd. v. Sea Captain's Choice, Inc.*, 50 F.3d 730, 732 (9th Cir.1995) (quotation omitted).

In finding that certain claims pleaded in Terran's complaint violated Rule 11, the district court concluded as follows:

Plaintiff's allegation that Defendant did not "actively participate" in the collection of Plaintiff's debt is not supported by the record;

Defendant did not "falsely represent" that the letter was from an attorney. Defendant is a licensed attorney and properly

identified as such in the May 16 validation notice;

There is no evidence that Defendant otherwise engaged in a "campaign of deceptive, unfair and abusive debt collection practices" as alleged in the complaint;

There is no evidence that Plaintiff in fact "suffered mental or emotional distress" as alleged in the complaint. Plaintiff's verification of the complaint makes this claim more egregious;

There is nothing in the record to support a claim of punitive damages as originally sought by the Plaintiff.

(E.R. Ex. D, at 8–9.) The district court further observed that Terran's complaint appeared to be a general form pleading that had not been properly revised to reflect the facts of his case.

The record shows that Terran dismissed all claims in this matter three weeks prior to trial, except the section 1692g claim for statutory damages. The responses by Terran's counsel to questions posed by the district court at the scheduling conference supports the district court's finding that Terran failed to conduct a reasonable inquiry before filing a complaint and compelling Kaplan to prepare a defense to invalid claims.[7]

The record amply demonstrates that Terran filed certain of his claims without a reasonable inquiry. Accordingly, the district court did not abuse its discretion by awarding Kaplan fees and costs pursuant to Rule 11.

 We have concluded that Terran was not entitled to attorneys' fees as the prevailing plaintiff. We also hold that the district court did not abuse its discretion in awarding Kaplan his fees and costs. The district court did not, however, determine the amount of attorneys' fees and costs to which Kaplan is entitled as a sanction for the Rule 11 violation. Accordingly, we must remand for a calculation of attorneys' fees and costs to be awarded to Kaplan.

Under Rule 11, the district court can "impose an appropriate sanction upon the attorneys, law firms, or parties." Fed.R.Civ.P. 11(c). It is unclear from the district court's order whether the sanction was imposed against Terran or his attorney. Upon remand, the district court is directed to indicate who should bear the burden of the Rule 11 sanction.

Lastly, Kaplan requests attorneys' fees and costs incurred for this appeal. Because we do not consider Terran's appeal to be frivolous, we must deny this request. Kaplan is, however, entitled to his costs on appeal as the prevailing party pursuant to Fed. R.App.P. 39(a).

REVERSED in PART, AFFIRMED in PART, and REMANDED.

---

7. The record reads as follows:

COURT: What are the actual damages claimed?
SHAW: The stress that he suffered.
COURT: What does that consist of, do you have a monetary amount?
SHAW: Not yet, no.
COURT: When are you going to get a monetary amount?
SHAW: Well, it is a matter of totaling up his medical bills, talking to his doctor that was treating him at the time to find out what the doctor thinks. If, in fact, the doctor says that he couldn't see any damages arising out of that, then, of course, we would drop the claim for actual damages and just proceed with the statutory damage request.
COURT: Well, I take it from what you are saying, you haven't done any investigation, at the time you filed the lawsuit, about the actual damages. Doesn't Rule 11 require you to do that?
SHAW: Yes.
COURT: And did you?
SHAW: Yes.
COURT: Okay. What are the actual damages?
SHAW: Medical damages.
COURT: What are those?
SHAW: Mr. Terran suffers from attention deficit disorder, high stress levels.
COURT: You made some investigation. What are the damages, special damages, doctor bills, or whatever?
SHAW: Yes. Doctor bills.
COURT: What are they?
SHAW: I don't have an exact amount, because I have not gotten with his doctor yet.
COURT: Aren't you required to do that by Rule 11 before you file a complaint?
SHAW: I think a reasonable investigation is required and one which I did conduct. I did conduct a reasonable investigation.
(Feb. 27, 1995 Tr. at 3-5.)