John Clifford TESMER, Charles Carter and Alois Schnell, on behalf of themselves and all similarly situated individuals, and Arthur M. Fitzgerald and Michael D. Vogler, Plaintiffs,

v.

Judge John F. KOWALSKI, Judge William A. Crane and Judge Lynda Heathscott, in their official capacities, individually and as representatives of a class of similarly situated circuit court judges, Defendants.

No. 00–CV–10082.

United States District Court,
E.D. Michigan,
Northern Division.

June 30, 2000.

**624**

Kary L. Moss, ACLU, Detroit, MI, Mark Granzotto, Detroit, MI, Jeanice Dagher–Margosian, Ann Arbor, MI, for Plaintiffs.

Thomas R. Wheeker, Michigan Department of Attorney General, Tort Defense Div., Lansing, MI, for Defendants.

*OPINION AND ORDER GRANTING PLAINTIFFS' MOTION FOR INJUNCTION AND DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION*

ROBERTS, District Judge.

**I.**

This matter is before the Court on Plaintiffs' Motion for Injunction filed May 9, 2000, and Plaintiffs' Motion for Class Certification, filed March 30, 2000. Plaintiffs request that the Court issue an injunction to enforce its prior declaratory judgment, which held that the denial of appellate counsel to indigents who have pled guilty or nolo contendere is unconstitutional. Additionally, they ask this Court to certify a class of circuit court judges similarly situated to the named Defendants. The parties have filed briefs, and, on Wednesday, June 28th, 2000, the Court heard argument. For the reasons explained below, Plaintiffs' Motion is **GRANTED.** Additionally, Judge Kolenda and all other similarly situated non-party judicial officers are bound by the present injunction, Fed.R.Civ.P. 65(d). Accordingly, Plaintiffs' Motion for Class Certification is **DENIED.**

**II.**

As a preliminary matter, this Court must consider whether it has jurisdiction to consider Plaintiffs' Motions. Defendants question the Court's authority in light of the fact that they have appealed the prior order to the Sixth Circuit Court of Appeals. Plaintiffs argue that Defendants have appealed an order that does not exist, inasmuch as their appeal concerns an "injunction," and this Court only entered a declaratory judgment. Because they claim the appeal is invalid, they encourage the Court to find jurisdiction.

The Court is mindful of the fact that an appeal generally divests the district court of jurisdiction over those aspects of the case which are involved in the appeal. *Griggs v. Provident Consumer*

*Discount Co.,* 459 U.S. 56, 58, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982). However, *Griggs* is "not an inflexible rule." *Cochran v. Birkel,* 651 F.2d 1219, 1223 (6th Cir. 1981). For example, a district court may proceed where "the order from which the appeal is sought is itself clearly nonappealable," *id.* at 1222, or "manifestly deficient." *Id.* at 1222 (quoting *Hodgson v. Mahoney,* 460 F.2d 326 (1st Cir.1972)). As such, there is reason to believe that the Court retains jurisdiction under the present circumstances.

■ Nonetheless, the Court finds it may assert jurisdiction without deciding whether Defendants' appeal meets the standards established in *Griggs.* The Court has the power to proceed with Plaintiff's Motions under the Declaratory Judgment Act, 28 U.S.C. § 2202. That act allows the Court to grant "further necessary or proper relief based on a declaratory judgment ... against a party whose rights have been determined by judgment." 29 U.S.C. § 2202. Since Plaintiffs' rights have been determined in this Court's prior Order, this Court may continue to grant such relief as necessary to protect those rights.

### III.

On March 31, 2000 this Court issued an Opinion and Order (1) Granting in Part and Denying in Part Defendants' Motion to Dismiss, (2) Denying Plaintiffs' Motion for Preliminary Injunction; and (3) Granting Plaintiffs' Request for Declaratory Judgment. At issue before the Court was the constitutionality of P.A.1999, No. 200 ("the Act") and the practice of some Michigan judges of denying appellate counsel to indigents who have pled guilty or nolo contendere, for the purpose of preparing applications for leave to appeal their plea based convictions and sentences. The Court declared, in no uncertain terms, that the denial of counsel in such cases rendered an indigent defendant's appeal a meaningless ritual and was, therefore, unconstitutional. *See March 31st Opinion*

*and Order* at 33–39. It specifically stated that the Act denied equal protection and due process to indigent defendants and similarly declared the challenged practices "of the judicial officer Defendants and other similarly situated state circuit court judges" unconstitutional.

Despite the March 31st Opinion and Order declaring the Act and practice unconstitutional, Defendant Heathscott continues to refuse to appoint appellate counsel to indigents who have pled guilty. Defendant Heathscott relies on her stated obligation to follow M.C.R. 6.425, a newly enacted Michigan Supreme Court rule designed to implement the Act that this Court declared unconstitutional.[1] Further, at oral argument, counsel for Judge Heathscott argued that Judge Heathscott had not violated this Court's declaration with respect to Plaintiffs, and that she was only failing to appoint counsel to criminal defendants who are not parties to this action.

Additionally, Judge Dennis Kolenda refuses to appoint appellate counsel, relying upon the fact that he was not a party to the original action. Judge Kolenda does concede that he had notice of this Court's Declaratory Judgment. (Plaintiffs' Motion for Issuance of an Injunction, at 4, citing Judge Kolenda's opinion in *People v. Hill,* No. 99–12376–FH (Kent Cir.Ct. Apr. 24, 2000)).

For the reasons stated below, the Court grants Plaintiffs' Motion for Injunction against Judge Heathscott. 28 U.S.C. § 2202; 42 U.S.C. § 1983; Fed.R.Civ.P. 65. Additionally, the Court cautions that Judge Kolenda and all other similarly situated non-party judicial officers are also bound by the present injunction. Under Fed.R.Civ.P. 65(d), an injunction is binding not only on the parties to the action, but also upon "those persons in active participation with them who receive actual notice of the order by personal service or otherwise." Thus, the Court finds it unnecessary to grant Plaintiffs' request to certify a

---

1. The Michigan State Supreme Court Rule came to the Court's attention by way of Plaintiffs' supplemental brief, submitted March 27, 2000.

class of circuit court judges similarly situated to the named Defendants.

## IV.

Plaintiffs request that the Court issue an injunction against both Judges Heathscott and Kolenda, and further request that the Court grant their Motion to Certify a Class of circuit court judges similarly situated with respect to the named Defendants. The Court addresses each argument in turn.

## A.

■ Upon review of the actions of Defendant Heathscott, the Court finds that a § 1983 injunction is appropriate. The authority to grant injunctive relief is conferred by 42 U.S.C § 1983, which could not be clearer that such relief is available once a declaratory decree has been violated. Additionally, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, allows this court to grant "further necessary or proper relief based on a declaratory judgment . . . against a party whose rights have been determined by judgment." 28 U.S.C. § 2202. Although injunctive relief against a state Court Judge is rarely awarded, "[t]here is no immunity bar to such relief, and in situations where, in their judgment, an injunction against a judicial officer was necessary to prevent irreparable injury to a petitioner's constitutional rights, courts have granted relief." *Pulliam v. Allen,* 466 U.S. 522, 537, 104 S.Ct. 1970, 80 L.Ed.2d 565 (1984). In particular, "[w]hen no state proceeding is pending, the considerations of equity, comity and federalism are [ ] diminished, [and] a federal court may . . . grant declaratory and injunctive relief." *WXYZ, Inc. v. Hand,* 658 F.2d 420, 423 (6th Cir.1981) (citing *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974)); *Wooley v. Maynard,* 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977).

While this Court, as many other federal courts, is reluctant to interfere with the functions of a state court, there is no state court action pending which would determine the constitutionality of the Act. *See* Plaintiffs' Supplemental Authority, Concurring Opinion of Corrigan J. ("[T]he constitutionality of 1999 P.A. 200 is not before us in *[People v.] Bulger.*"). Meanwhile, Judge Heathscott continues to act "under color of [a] regulation . . . in [subjecting persons] to the deprivation of . . . rights . . . secured by the Constitution. . . ." 42 U.S.C. § 1983. She does not contest that she continues to fail to appoint counsel to indigent criminal defendants who have entered guilty or nolo contendere pleas, contrary to this Court's declaration that such a practice violates the equal protection and due process requirements of the United States Constitution.

■ Further, while Defendant Heathscott apparently claims she is merely following a court rule that was not examined by the Court when it issued its March 31st Order, this argument does not immunize her actions. The Michigan court rule upon which she relies, M.C.R. 6.425, is specifically designed to implement the Act that this Court's Order clearly declared unconstitutional. *See Order* at 3 ("Additionally, the Court declares that 1999 P.A. 200 . . . is unconstitutional in that it denies equal protection and due process to indigent individuals who have pleaded guilty or nolo contendere,"); *see also* Objections to implementation of court rules by Justices Cavanagh and Kelly, attached to Plaintiffs' Supplemental Authority (criticizing the Michigan Supreme Court's rush to amend the court rules to reflect the standards proposed in the Act). As such, the Michigan court rule conflicts with federal law and is "without effect" under the Supremacy Clause of the United States Constitution.[2] U.S. Const. art. VI; *M'Culloch v.*

2. The Court notes that this is not a situation where a state court has made its own independent review of the constitutional questions decided by this court. As such, there is no claim made that Judge Heathscott is not

bound in light of the parallelism between state courts and lower federal courts. *See Freeman v. Lane,* 962. F.2d 1252, 1258 (7th Cir.1992) ("In passing on federal constitutional questions, the state courts and the lower

*State of Maryland,* 17 U.S. (4 Wheat.), 316, 4 L.Ed. 579 (1819) (any state law that conflicts with federal law is "without effect."). Defendant Heathscott, therefore, cannot shield her actions from review by relying on a state procedural rule that indisputably conflicts with federal law.[3]

■ Additionally, the Court is troubled by the disingenuous arguments made by Judge Heathscott to insulate herself from the clear remedial provisions set forth in § 1983 against judicial officers. In reviewing those same provisions, the United States Supreme Court found no indication of affirmative congressional intent to insulate judges from the reach of the remedy Congress provided in 1983. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). As the High Court has further explained:

> Congress enacted 1983 . . . to provide an independent avenue for protection of federal constitutional rights. The remedy was considered necessary because state courts were being used to harass and injure individuals, either because the state courts were powerless to stop deprivations or were in league with those who were bent upon abrogation of federally protected rights . . .
>
> Subsequent interpretations of the Civil Rights Acts by this Court acknowledge Congress' intent to reach unconstitutional actions by all state actors, including judges.

*Pulliam,* 466 U.S. at 540, 104 S.Ct. 1970 (internal quotations and citations omitted). While the Court acknowledged that "much has changed since the Civil Rights Acts were passed," *id.,* it also stated:

> We remain steadfast in our conclusion, nevertheless, that Congress intended § 1983 to be an independent protection for federal rights and find nothing to suggest that Congress intended to expand the commonlaw doctrine of judicial

federal courts have the same responsibility and occupy the same position.").

**3.** Further, under the authority of 28 U.S.C. § 2202, this Court also clarifies that its de-

immunity to insulate state judges completely from federal collateral review. *Id.* at 541, 104 S.Ct. 1970.

The Court is mindful of Defendant's argument that it should act with restraint. However, the Court cannot shirk its obligation to exercise its jurisdiction on behalf of litigants to assure their right to due process and the equal protection of the laws. "The very purpose of section 1983 was to interpose the federal courts between the states and the people, as guardians of the people's federal rights— to protect the people from unconstitutional action, under the color of state law, whether that action be executive, legislative or judicial." *Id.* (quoting *Mitchum v. Foster,* 407 U.S. 225, 242, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972)). This Court will do precisely that, even though the result may be to enjoin a state court judge, or even to hold her in contempt for continued violations. *Pulliam,* 466 U.S. at 538 n. 19, 104 S.Ct. 1970.

### B.

■ The Court also finds that Judge Kolenda is bound by this injunction, in spite of the fact that he was not a named party in the original declaratory decree. "A court may bind nonparties to the terms of an injunction or restraining order to preserve its ability to render a judgment in a case over which it has jurisdiction." *United States v. Paccione,* 964 F.2d 1269, 1274–75 (2nd Cir.1992). Indeed, Fed. R.Civ.P. 65(d) specifically provides that an injunction is binding "upon those persons in active concert or participation with [the parties] who receive actual notice of the order. . . ." Fed.R.Civ.P. 65(d) extends to those who participate with the named defendants even where the non-parties "were independently motivated." *New York State Nat'l Organization for Women v.*

claratory judgment extends to all procedural rules designed to implement the statute declared unconstitutional.

*Terry,* 961 F.2d 390, 397 (2d Cir.1992), *vacated on other grounds,* 507 U.S. 901, 113 S.Ct. 1233, 122 L.Ed.2d 640 (1993).

In the present case, it is undisputed that Judge Kolenda received actual notice of the March 31st Opinion and Order, as he specifically cited it to it and stated his disagreement with it. *See* Exhibit B to Pl's Motion for Injunction. Further, in finding that the criminal defendant was not entitled to appellate counsel, Judge Kolenda participated with the named Judges who adopted the practices declared unconstitutional by this Court, even as he cited his own independent motivations for doing so. As such, the Court finds it necessary to bind Judge Kolenda by means of an injunction to preserve its prior Order.

■ Further, the Court concludes that it may validly issue a § 1983 injunction against Judge Kolenda even though he was not a party to the original action. The 1996 amendments to § 1983 indicate that an injunction may issue against a judicial officer when "a declaratory decree was violated...." 42 U.S.C. § 1983. In the present case, Plaintiffs obtained a declaratory decree, and its terms were violated by Judge Kolenda. As such, it appears that Plaintiffs are entitled to an injunction against him.

In so concluding, the Court is mindful that the issue of whether an injunction can issue with respect to those judicial officers not parties to the prior declaratory decree, is not clear cut. The statute is somewhat vague, the legislative history is ambiguous and the issue appears to be one of first impression. However, following the general rules of statutory construction, the Court notes that the plain language of the statute requires only "a" declaratory decree. Had Congress intended to require plaintiffs to obtain a separate declaratory decree with respect to each judicial officer against whom an injunction was sought, it could have easily specified as much. In particular, Congress could have easily stated that injunctive relief should not issue

unless a judicial officer violated a declaratory decree against him/her.

Further, the Court finds that simply requiring one declaratory decree best enforces the purposes 42 U.S.C. § 1983. As explained *supra,* § 1983 was intended to prohibit state courts from being used to deprive individuals of their federal rights. It was intended to interpose the federal courts between the states and the people, as guardians of the people's federal rights. Moreover, the Supreme Court has consistently held that Congress did not intend to immunize judicial officers. Thus, once a state judicial practice is declared unconstitutional, such declaratory decree should serve as a basis for injunctive relief against any judicial officer violating its provisions. To rule otherwise would potentially require individuals like Plaintiffs to file numerous suits for declaratory decrees against several judges on the same issue, or to seek to amend their complaints repeatedly each time another judicial officer violated the terms of a decree. It would, therefore, require a significant expenditure of time and resources, and would impose a significant burden on efforts to protect against deprivations of constitutional rights. Thus, while the Court is concerned with comity and respects the ability of state judges to pass on federal constitutional questions, it concludes that the balance of considerations in the present case weighs in favor of requiring only "a" declaratory decree.

## C.

■ Plaintiffs additionally urge this Court to consider their Motion for Class Certification, since Judge Kolenda relies upon this Court's failure to certify a class as a justification for not following the Order. As an initial matter, the Court would expect that Judge Kolenda and other state court judges would refrain from engaging in their own analysis, since this Court's prior Order specifically declared unconstitutional the "practice of the Judges and other similarly situated State of Michigan

circuit court judges...." *March 31st Opinion and Order* at 2, 40. While the Court stopped short of formally certifying the class of circuit judges under Fed. R.Civ.P. 23, the decision clearly indicated the Court's inclination to do so.

At the present time, however, the Court declines Plaintiffs' request to certify the class. As the Court noted earlier, this matter is now on appeal. While the Court recognizes its authority to enforce its declaratory decree, it is not yet satisfied that certifying a class constitutes enforcement, as opposed to expansion, of its prior Order. Further, the Court again notes that under Fed.R.Civ.P. 65(d) any non-party who acts in "concert or participation with [the parties]" and who receives actual notice of this injunction, is bound by its terms. Between the specific language of this Court's March 31st Opinion and Order, and the language of Rule 65(d), the Court is hopeful that all other non-party judges will abide by its ruling unless and until it is overturned by a higher federal court. As such, the Court concludes that further relief in the form of class certification is not warranted.

## V.

It is unfortunate that the defiance of certain state court judges has led to the need for this request for extraordinary relief against judicial officers. The paucity of cases addressing the issues set forth in Plaintiff's Motion suggests that the overwhelming majority of judges do abide by federal court orders that are designed to enforce the United States Constitution. The state judges who choose to enforce statutes declared to be unconstitutional should appreciate that their acts of defiance will certainly carry costs, not the least of which is the erosion of respect among parallel courts. If necessary, the Court will not hesitate to *sua sponte* certify a class of state circuit judges if is later satisfied that such action is necessary to further enforce the March 31st Opinion and Order. *Barrientos v. Law Offices of Mark L. Nichter*, 76 F.Supp.2d 510, 516 (S.D.N.Y.1999) ("District courts may rule on class certification sua sponte."); *McGowan v. Faulkner Concrete Pipe Co.*, 659 F.2d 554, 559 (5th Cir.1981); *see also Shipp v. Memphis Area Office, Tenn, Dept. of Employment Sec.*, 581 F.2d 1167, 1169 (6th Cir.1978) (noting that the district court did not certify the class sua sponte).

Therefore, for all of the reasons stated above, and under the authority of 42 U.S.C. § 1983, 28 U.S.C. § 2202, and Fed. R.Civ.P. 65, this Court enjoins Judge Lynda L. Heathscott and Judge Dennis C. Kolenda from violating this Court's Order of March 31, 2000; clarifies that such order pertains to all court rules, regulations or procedures designed to implement the Act declared to be unconstitutional; clarifies that such order prohibits all state court judicial officers from taking any action whatsoever to enforce or implement the Act; and states that this Order shall have binding effect upon other such non-party judicial officers who participate in the practice declared unconstitutional and who receive notice of this Order, including Judge Kolenda.

**IT IS SO ORDERED.**